THE PEOPLE *ex rel.* Henry S. Pletcher *et al.* Appellants, *vs.* THE CITY OF JOLIET, Appellee.

*Opinion filed April 23, 1926—Rehearing denied June 4, 1926.*

1. MUNICIPAL CORPORATIONS—*meaning of the term "agricultural purposes," in act of 1921 for annexation of territory to city.* The term "agricultural purposes," as used in the act of 1921, (Smith's Stat. 1925, p. 377,) providing an additional method of annexing territory to cities and excluding from its provisions lands devoted to such purposes, must be taken in its general and comprehensive meaning as including all farm or horticultural purposes, and a tract of two and one-half acres devoted to the production of grapes, hay and oats must be held as not subject to annexation unless shown to be bounded on three sides by subdivided property.

2. CONSTITUTIONAL LAW—*constitutional questions will not be considered if unnecessary to decide the case.* Where it is not necessary to a proper disposition of the case to consider or determine constitutional questions presented the Supreme Court will not decide them.

APPEAL from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

HJALMAR REHN, State's Attorney, and SAMUEL W. KING, for appellants.

FRANK J. WISE, City Attorney, (WILLIAM C. MOONEY, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is from a judgment of not guilty entered by the circuit court of Will county in a *quo warranto* proceeding brought to test the validity of certain proceedings to annex territory to the city of Joliet, pursuant to the provisions of the act of June 20, 1921, providing an additional method of annexing territory to cities in this State. (Smith's Stat. 1925, p. 377.) This act provides for the annexation of territory, conforming to the limitations fixed by the act, to a city to which the territory is contiguous, excluding, however, lands "used exclusively for agricultural purposes" where the owner does not consent to its inclusion, "unless such agricultural lands are bounded on at least three sides by subdivided lands also embraced in such territory to be annexed."

It is contended by appellants that a judgment of ouster should have been entered because (1) the lands of relator Henry S. Pletcher are agricultural lands which are not bounded on three sides by subdivided lands and he has not given his consent to the annexation; and (2) the act under which the annexation proceedings were had is void because it was not passed in the manner prescribed by the constitution, is a local and special law which delegates executive duties to the judge of the county court, is so uncertain that it is incapable of administration, and is so unreasonable that it deprives the owners of property within the territory sought to be annexed, of their property without due process of law.

The lands sought to be annexed lie east of the city of Joliet. Pletcher owns a 2½-acre tract, the east line of which is the east line of the territory sought to be annexed. His residence and other buildings occupy about one-eighth of the tract. Three-fourths of an acre is a grape vineyard and the remainder of the tract is in meadow. He harvests hay from this tract and sells it to his neighbors. As soon

as his vineyard is old enough to produce he proposes to sell grapes. That part of the tract now in meadow was in oats in 1924. East of this tract are farm lands not embraced in the territory sought to be annexed. North of the tract is an 80-acre farm which is embraced in the territory sought to be annexed. West of the tract is an acre-tract which Pletcher formerly owned. West of the acre-tract and south of both tracts are lots forming a part of Hyde Park subdivision.

The first question of fact to be determined is whether Pletcher's tract is "bounded on at least three sides by subdivided lands." Just what the legislature meant by subdivided lands is difficult to determine. Under the congressional system of surveying, most of the lands of this State are divided into townships, which in turn are subdivided into sections, and these are in turn subdivided into half-sections, quarter-sections and quarter-quarter-sections. It is clear that the legislature did not mean to include within the words "subdivided lands," subdivisions of 40 acres or more. Among dealers in real estate, lands divided into blocks and lots are often called subdivided lands, but no such definition is given in any standard dictionary. The parties to this litigation seem to treat the words as meaning lands divided into city lots, and for the purposes of this discussion we shall so treat them.

It is conceded by appellee that the 80-acre tract north of the Pletcher tract is not subdivided land, but it is contended that Pletcher has subdivided the north third of his tract into city lots and that this brings his lands within the language of the statute. This contention is based upon the testimony of Ben Brunning, who is a real estate salesman. He states that he assisted Pletcher to stake out six lots across the north end of the tract of land and that Pletcher listed them for sale with him. Pletcher testifies on this point that Brunning's employer, Fred Walsh, was interested in the annexation of the territory and requested witness to

withdraw his objections; that he refused to do this, and Walsh asked him what it would take to make him neutral; that he replied that he would be neutral when he did not own any property in the territory; that Walsh asked him to put a price on his property, and he priced it at $800 a lot; that Brunning came to his place a few days later and inquired what part of his tract was for sale; that together they measured a strip off the north end of this tract to ascertain how many lots could be carved out of it, but that nothing further was done; that no lots were staked off and no effort was made to sell the lots; that no portion of his land had been surveyed with the intention of subdividing it into lots and none of it had ever been subdivided; that he had not prepared a plat showing a subdivision of his land into lots nor had any such plat been prepared. John M. Wolfrom, an abstracter, testified that he had examined the records in the office of the recorder of Will county but found no recorded plat showing a subdivision into lots of Pletcher's tract. From his knowledge of the territory in question and from the records, he testified that the land north of Pletcher's was unsubdivided farm land and that there was an acre-tract west of Pletcher's land. It is clear from this evidence that Pletcher's tract is not bounded on three sides by subdivided lands, as the term "subdivided" is used in the statute.

The next question is whether Pletcher's tract is used "for agricultural purposes." "Agricultural" is another indefinite word which renders the statute more or less uncertain. The definition given by Webster is, "of or pertaining to agriculture; connected with, or engaged in tillage." "Agriculture" is defined as the "art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use. In

this broad use it includes farming, horticulture and forestry, together with such subjects as butter and cheese making, sugar making, etc." Unless restricted by the context, the words "agricultural purposes" have generally been given this comprehensive meaning by the courts of the country. (*State* v. *Stewart*, 58 Mont. 1, 190 Pac. 129; *Davis* v. *Industrial Com.* 59 Utah, 607, 206 Pac. 267; *Cook* v. *Massey*, 38 Ida. 264, 220 Pac. 1088; *Northern Cedar Co.* v. *French*, (Wash.) 230 Pac. 837; *Binzel* v. *Grogan*, 67 Wis. 147, 29 N. W. 895; *Slycord* v. *Horn*, 179 Ia. 936, 162 N. W. 249; *McNeeley* v. *State*, 50 Tex. Crim. 279, 96 S. W. 1083; *Simons* v. *Lovell*, 7 Heisk. (Tenn.) 510; *Dillard* v. *Webb*, 55 Ala. 468.) The words "agricultural purposes" are descriptive of the nature of the use to which the land is put, (*Lerch* v. *Missoula Brick and Tile Co.* 45 Mont. 314, 123 Pac. 25,) and so the amount of land involved would have no bearing on the meaning of the words. No one can seriously contend that land devoted to the production of grapes and hay and oats is not used for agricultural purposes. If the legislature desires to limit the application of the words to tracts containing more than two and one-half acres then it must fix the limitation. We have no authority to do so.

The lands of Pletcher are "used exclusively for agricultural purposes" and are not "bounded on at least three sides by subdivided lands also embraced in such territory to be annexed," within the meaning of the statute, and can not be embraced in territory to be annexed to appellee without his written consent.

Inasmuch as it is not necessary to a proper disposition of this case to consider or determine the constitutional questions presented we do not decide them. *People* v. *Small*, 319 Ill. 437.

The judgment is reversed and the cause is remanded to the circuit court of Will county.

*Reversed and remanded.*